Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000577
20-FEB-2019
07:54 AM

NO. CAAP-16-0000577

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JUSTIN D. DOBBS, Plaintiff-Appellant, v.
COUNTY OF MAUI; JAMES D. LLOY; FRANKLYN SILVA;
BILL D. PACHECO; HARRY MATSUURA, SR., Defendants-Appellees,
and JOHN DOES 1-10; DOE ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 12-1-0812(2))

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)

Plaintiff-Appellant Justin D. Dobbs (**Dobbs**) appeals
from a July 28, 2016 Final Judgment (**Judgment**) entered by the
Circuit Court of the Second Circuit (**Circuit Court**).[1]  Dobbs also
challenges the Circuit Court's July 21, 2016 Findings of Fact,
Conclusions of Law and Order Granting [Appellees-]Defendants
County of Maui[(**County**)], James D. Lloy, Franklyn Silva, Bill D.
Pacheco, and Harry Matsuura, Sr.'s [(**Appellees**)] Motion for
Summary Judgment (**Order Granting Summary Judgment**).[2]

_____

[1]     The Honorable Peter T. Cahill presided.

[2]     Only claims against the County remained when, after the subject
motion for summary judgment was filed, the parties stipulated to dismiss all
(continued...)

On appeal, Dobbs contends that the Circuit Court: (1) plainly erred when it failed to *sua sponte* continue the June 24, 2016 hearing on Appellees' April 1, 2016 motion for summary judgment (**Second MSJ**); and (2) plainly erred when it entered the Order Granting Summary Judgment.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Dobbs's points of error as follows:

(1) Dobbs argues that the Circuit Court plainly erred and abused its discretion when it failed to *sua sponte* continue the June 24, 2016 hearing on the Second MSJ because Dobbs's attorney was in the hospital and could not attend. This argument is without merit.

Dobbs filed a Verified Complaint against Appellees on October 12, 2012. After nearly three years of discovery and pretrial proceedings, including a prior (stipulated) continuance of the trial date from September 8, 2014 to October 19, 2015, on October 1, 2015, the Circuit Court entered an Amended Notice of Trial Date [and] Pretrial Order (**Amended Pretrial Order**). The Amended Pretrial Order, *inter alia*, set a trial date of September 6, 2016, ordered no further discovery except by court approval, required all motions *in limine* to be filed by March 1, 2016, ordered all new dispositive motions to be filed by April 1, 2016, with memoranda in opposition due on May 15, 2016, and reply

---

[2](...continued)
claims against the individual defendants, who had been named in their personal capacity.

memoranda due by June 1, 2016, and set the June 24, 2016 date for hearing of any dispositive motions. It appears from the record that no new discovery was requested after the entry of the Amended Pretrial Order. In advance of the June 24, 2016 hearing date for dispositive motions, motions *in limine* had in fact been filed and ruled on.

The Second MSJ was timely filed in accordance with the Amended Pretrial Order. No memorandum in opposition was filed by the May 15, 2016 deadline and no request to extend the deadline for filing an opposition to the Second MSJ was ever filed. On April 19, 2016, Dobbs's trial counsel filed a motion to withdraw based on Dobbs's alleged failure to pay fees as agreed and a breakdown of the attorney-client relationship, which was heard on May 20, 2016. Although the Circuit Court orally granted Dobbs's counsel the requested relief, it appears that there was reconciliation, as counsel apparently continued to represent Dobbs, approving various orders and a stipulation, and counsel did not submit a form of order granting the motion to withdraw.

After Dobbs's counsel apparently informed opposing counsel and the court that she would not be in attendance, Dobbs appeared alone at the June 24, 2016 hearing. After initially declining the court's offer to address the court concerning the Second MSJ, as the Circuit Court was ruling on the motion, Dobbs stated, "I do have counsel, and she's hospitalized at this time." The court noted that it had granted counsel's motion to withdraw, and Dobbs stated that "she's now my lawyer." The Circuit Court noted that he had orally granted counsel's request to withdraw

but no order was entered, that it was the plaintiff's burden to file a memorandum in opposition, either himself or through counsel, that the time for that had expired and the case was four-years-old. The court then continued with its ruling on the Second MSJ. As the court was directing the County's lawyer to submit a form of order to both Dobbs and his attorney, Dobbs stated that he and his attorney had signed a contingency agreement. The court noted that it had received letters from counsel saying that she was in the hospital, but Dobbs would be there, and to please proceed without her. The court commented that the confusion surrounding Dobbs's representation was totally unfair to the other side and may be unfair to Dobbs too, but that the issue was for him and his attorney to work out. At no point did Dobbs or his counsel orally or in writing seek more time to respond to the Second MSJ or request a continued hearing date.

Based on the record in this case, we conclude that the Circuit Court did not plainly err or abuse its discretion in failing to *sua sponte* continue the June 24, 2016 hearing on the Second MSJ. See Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 377, 14 P.3d 1049, 1058 (2000) (holding that the circuit court properly proceeded with a hearing, in the absence of plaintiff's counsel, citing Rules of the Circuit Courts of the State of Hawaii Rules 7 and 8).

(2) Dobbs argues that the Circuit Court plainly erred in granting summary judgment in favor of the County on his two remaining claims against the County, *i.e.*, Dobbs's claims of retaliatory termination in violation of Hawaii Revised Statutes

4

(HRS) § 378-62 (2015), Hawaii Whistleblowers' Protection Act

(**HWPA**), and the First Amendment of the United States

Constitution.

The HWPA provides in relevant part:

> **§ 378-62 Discharge of, threats to, or discrimination against employee for reporting violations of law.** An employer shall not discharge, threaten, or otherwise discriminat against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
> (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States[.]

HRS § 378-62(1)(A).

In order to prevail on an HWPA claim, an employee must

prove that: (1) the employee engaged in protected conduct under

the HWPA; (2) the employer took an adverse employment action

against the employee; and (3) a causal connection exists between

the employee's protected conduct and the employer's adverse

action (*i.e.*, the employer's action was taken because the

employee engaged in protected conduct; the employee has the

burden of showing that the protected conduct was a "substantial

or motivating factor" in the employer's decision to take the

employment action). See <u>Crosby v. State Dept of Budget & Fin.</u>,

76 Hawai'i 332, 341-42, 876 P.2d 1300, 1309-10 (1994)).

The employer has the burden of negating causation only

after the employee first demonstrates a causal connection between

the protected activity and the employee's termination. <u>Id.</u> at

342, 876 P.2d at 1310. Therefore, "[o]nce the employee shows

5

that the employer's disapproval of his [protected activity] played a role in the employer's action against him or her, the employer can defend affirmatively by showing that the termination would have occurred regardless of the protected activity."  Id. (citation, internal quotation marks, and brackets omitted) (applying federal case law on employees' rights under the National Labor Relations Act to the HWPA).  "[I]f the employer rebuts the prima facie case, the burden reverts to the [employee] to demonstrate that the [employer's] proffered reasons were 'pretextual.'" Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 14, 346 P.3d 70, 83 (2015) (quoting Shoppe, 94 Hawaiʻi at 379, 14 P.3d at 1060) (describing the similar burden-shifting analysis that Hawaiʻi courts use when analyzing a claim of age discrimination that relies on circumstantial evidence)). Although Crosby reviewed a ruling entered after a jury-waived trial, this court and the United States District Court for the District of Hawaiʻi have applied the HWPA burden-shifting analysis at summary judgment.  See Medina v. FCH Enterprises, Inc., No. CAAP-14-0001316, 2016 WL 6748063, *4 (Haw. App. Nov. 15, 2016) (mem. op.); Taguchi v. State, Dept of Health, No. CAAP-10-0000129, 2012 WL 5676833, *1-2 (Haw. App. Nov. 15, 2012) (sdo); Mussack v. State, No. 28774, 2011 WL 6144904, *3 (Haw. App. Dec. 7, 2011) (sdo); see also Tagupa v. VIPdesk, Inc., 125 F. Supp. 3d 1108, 1119 (D. Haw. 2015); Griffin v. JTSI, Inc., 654 F. Supp. 2d 1122, 1131-32 (D. Haw. 2008).

On appeal, Dobbs only challenges the Circuit Court's determination that Dobbs failed to demonstrate a causal

connection between his protected activity and his termination. As stated above, Dobbs had the burden of showing that his protected conduct was a "substantial or motivating factor" in the County's decision to terminate him. See Crosby, 76 Hawaiʻi at 341-42, 876 P.2d at 1309-10; Medina, 2016 WL 6748063 at *3; accord Mussack, 2011 WL 6144904 at *3.

In the Summary Judgment Order, the Circuit Court found:

> 14. The County presented undisputed evidence that it terminated Plaintiff on legitimate grounds: poor performance coupled with violation of County and Department rules against violence in the workplace, and unprofessional and unethical conduct. (See Docket No. 68; Exhs. B-G, I-J, L-N; and the Declarations of Bill Pacheco, Julie Earl, Cullen Kawano, and Sarah Cordeiro.)
>
> . . . .
>
> 16. Plaintiff failed to bring forward any evidence of a causal connection between his alleged protected activities and his termination, a fundamental element to establish a prima facie case under the HWPA and his freedom of speech claims. (Trans. 6:20-22.)

The court then concluded:

> 11. However, Plaintiff has failed to provide any direct or circumstantial evidence supporting either the HWPA or free speech claims that there is any causal connection between his supposed protected conduct and subsequent termination. (Trans. 10:20-25.)
>
> . . . .
>
> 13. Even if Plaintiff had presented evidence of causation, the County has presented legitimate, non-retaliatory grounds for Plaintiffs termination, and Plaintiff has not provided any evidence such grounds were truly a pretext. (Trans. 8:1-4.)

Dobbs argues that genuine issues of material fact existed as to the date of termination, causation, and pretext.

Concerning the date of the termination of Dobbs's employment from the Department of Liquor Control (**DLC**), the DLC sent Dobbs two termination letters. The first termination letter followed an incident that led to Sansei Seafood Restaurant and

7

Sushi Bar (**Sansei**) manager, Michael Russomanno (**Russomano**), filing a formal complaint against Dobbs, which led to an investigation that resulted in Dobbs's termination (**Sansei Investigation**). The second letter followed an investigation stemming from a Violence in the Workplace Incident Report dated August 11, 2011 (**Violence Investigation**). At a hearing on an earlier summary judgment motion, the Circuit Court questioned how the County could fire a person twice. The court commented that a reasonable jury might conclude because the County sought to fire Dobbs twice that it "did not have enough the first time around."

Dobbs now argues that the County brought nothing forth in the Second MSJ to resolve this issue, thus creating a genuine issue of material fact. The County responds that, with the Second MSJ, it submitted an August 29, 2011 memorandum from County Managing Director, Keith A. Regan (**Managing Director Regan**), mandating the completion of the Violence Investigation, irrespective of whether Dobbs remained employed with DLC.

The issue, however, is whether there was a genuine issue of material fact as to the date of Dobbs's termination. The record shows that, in Dobbs's Complaint, he identifies his effective termination date as August 27, 2011. In Dobbs's opposition to the first summary judgment motion, Dobbs argued "it is undisputed that [the County] fired [Dobbs] on August 27, 2011, yet opened an Investigation for Violence in the Workplace on [Dobbs] two months after he was fired[.]" In a related declaration, Dobbs averred that he was terminated effective August 27, 2011, and he claimed the Violence Investigation

started after his termination in an effort to deprive him of unemployment benefits. Between August 27, 2011, and September 15, 2011, Dobbs made a claim for unemployment insurance indicating employment dates with the DLC from October 16, 2010 to August 27, 2011.[3] Dobbs opened a grievance with the Hawaii Government Employees Association pertaining to his termination from the DLC effective August 27, 2011. In his deposition, Dobbs acknowledged that he had been terminated in August 2011 prior to receiving notice of the Violence Investigation. As noted, the Second MSJ included evidence of the August 29, 2011 direction from Managing Director Regan to pursue the Violence Investigation irrespective of Dobbs's employment status. The County also included the entire Violence Investigation file. The further evidence included Chief Enforcement Officer Bill Pacheco's (**Chief Pacheco**) deposition, which indicated that Dobbs was already terminated during the time Chief Pacheco pursued the Violence Investigation and recommended his termination. Chief Pacheco's October 3, 2011 "Violence in the Workplace Investigation Report" twice identified Dobbs as a former trainee, and specifically addressd the issue in a section entitled "EMPLOYMENT STATUS OF JUSTIN DOBBS," which declared him terminated. There is not a scintilla of evidence in the record that Dobbs was employed by the County from the end of August of 2011 to February of 2012, notwithstanding the language of the February 2012 letter. Thus,

---

[3]     It should be noted that both the County and Dobbs placed this document on the record. This document contains personal information as defined by Hawai'i Court Records Rule 9 in the form of Dobbs's Social Security Number. We may choose in our discretion to order the record sealed and require the parties to file a redacted record. Oahu Publ'ns, Inc. v. Takase, 139 Hawai'i 236, 248, 386 P.3d 873, 885 (2016).

we conclude that the Circuit Court did not err in concluding that there was no genuine issue of material fact as to Dobbs's termination date.[4]

This court has previously recognized temporal proximity as a means to demonstrate causation in a HWPA claims. Mussack, 2011 WL 6144904 at *4. Dobbs has asserted that he verbally reported violations of law to Field Supervisor James "J.D." Lloy (**FS Lloy**) at the end of April 2011. Although FS Lloy denied this claim under oath, we must assume that Dobbs made the report to FS Lloy. Adams, 135 Hawai'i at 12, 346 P.3d at 81. In addition, Field Supervisor Harry Matsuura (**FS Matsuura**) testified at deposition that he received a complaint form from Dobbs and brought it to the personnel office; Dobbs claims that this occurred in May of 2011. Thus, for summary judgment purposes, it must be assumed that Dobbs engaged in protected activity at the end of April 2011 and the end of May 2011. Id.

To make a circumstantial case for causal link by temporal proximity, at a minimum, (1) the employer must know about the protected activity, and (2) there must be temporal proximity between the protected activity and the adverse employment action. You v. Longs Drugs Stores Cal., LLC, 937 F. Supp. 2d 1237, 1258 (D. Haw. 2013). In You, the court rejected

---

[4] We also note that Dobbs presented no evidence of whistleblowing activities during the period between August 2011 and February 2012. Dobbs points to a notice from the State of Hawai'i Unemployment Insurance Division. However, the document cited by Dobbs indicates that the County failed to provide information requested by the Unemployment Insurance Division in a timely manner, not that the evidence in the Sansei Investigation was deficient. Dobbs has failed to demonstrate any materiality as to the fact of the date of Dobbs's termination.

the employee's claim because she failed to show the person that fired her had knowledge of any protected activity.  Id.

Here, DLC Department Head/Director Franklyn Silva (**Director Silva**) held the ultimate authority to terminate Dobbs. Looking at the evidence submitted in opposition to the first summary judgment motion in the light most favorable to Dobbs, there is some evidence that FS Matsuura checked with Director Silva regarding Dobbs's complaint and that Director Silva was aware of Dobbs's written whistleblower complaint by the end of May 2011.  The Sansei Investigation formally began after Russomanno's notarized complaint on July 8, 2011, a month or so later.  However, there is no basis in the record to impute any retaliatory motive or intent to Director Silva.  In addition, while Director Silva held the authority to terminate Dobbs, he terminated Dobbs pursuant to the Sansei Investigation in consultation with Chief Pacheco.  Chief Pacheco states that he was never made aware that Dobbs intended to report what he considered fraud or other allegations within the department. Dobbs has presented no evidence at any time that Chief Pacheco had any basis to form a retaliatory intent.  Chief Pacheco testified Russomanno filed his notarized complaint directly with Chief Pacheco, Russomanno stated that he was personally afraid of Dobbs, and Chief Pacheco independently found Russomanno to be credible.  Thus, the firing process was insulated from any alleged retaliatory motives that might have been held by FS Lloy and FS Matsuura.

In addition, Chief Pacheco documented issues with Dobbs in a May 25, 2011 letter, prior to the alleged submission of the written complaint. Director Silva averred that Dobbs's entire record was taken into account when making the firing decision. Chief Pacheco stated he was not aware that Dobbs made a whistleblower complaint. At no time did Dobbs present evidence or point to facts that would challenge Chief Pacheco's account. Thus, notwithstanding the mere fact of some temporal proximity, Dobbs failed to make a showing that his protected activity was a "substantial or motivating factor" in the County's decision to terminate his employment. We cannot conclude, based on the record in this case, that the temporal proximity between Dobbs's protected activity and the adverse employment action created a genuine issue of material fact as to causation.

As to pretext, the Circuit Court found that Dobbs's claims failed because the County demonstrated non-retaliatory grounds for Dobbs's termination. An employer may negate a *prima facie* showing of causation by temporal proximity by demonstrating that it would have taken the same actions regardless of the employee's protected activity. <u>Taqupa</u>, 125 F. Supp. 3d at 1120-21 (discussing the <u>Crosby</u> court's adoption of the mixed motive analysis used in constitutional speech violations). Indeed, "[a]n employer may negate causation ex post facto by presenting evidence of other reasons for termination outside of the protected conduct, even if the other reasons were unknown to the employer at the time of

termination." Id. at 1121 (citations omitted). Here, the County demonstrated, and it is undisputed, that the County would have terminated Dobbs pursuant to the outcome of the Violence Investigation. The incidents subject to the Violence Investigation occurred prior to the protected activity, but came to light after the protected activity and prior to Dobbs's termination. Thus, the County presented a non-retaliatory basis for Dobbs's termination. "[I]f the employer rebuts the prima facie case, the burden reverts to the [employee] to demonstrate that the [employer's] proffered reasons were 'pretextual.'" Medina, 2016 WL 6748063 at *4 (quoting Adams, 135 Hawaiʻi at 14, 346 P.3d at 83 (quoting Shoppe, 94 Hawaiʻi at 379, 14 P.3d at 1060)). "A plaintiff may establish pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Shoppe, 94 Hawaiʻi at 379, 14 P.3d at 1060 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

Here, Dobbs now challenges the factual basis for the Sansei Investigation, but does not challenge the validity of the Violence Investigation or its conclusions. Dobbs challenges the basis of the Sansei Investigation by citing Russomanno's August 10, 2015 deposition in which Russomanno says that he did not give Dobbs a discount on the check because Dobbs was a DLC trainee. Dobbs's argument relies on inconsistencies in Russomanno's recall. In one telling, Russomanno recognized Dobbs as a Liquor Control Officer (**LCO**) Trainee, and at two

other times, Russomanno states that Dobbs affirmatively identified himself as an LCO Trainee. However, Russomanno's complaint was based on Dobbs bullying his server and making a scene in the restaurant. However, this inconsistency in Russomanno's deposition does not render the conclusions of the Sansei Investigation wrong. The allegations underlying the investigation were that Dobbs used his position with the DLC to obtain seating accommodations and a discount, treated the server in a rude and disrespectful manner, and then made loud and profane references to FS Lloy and FS Matsuura. As to Dobbs's challenge to the Sansei Investigation, although Dobbs previously questioned Russomanno's reasons for making the complaint, Dobbs did not argue in the Circuit Court proceedings that the Sansei Investigation was baseless, and therefore, this argument is deemed waived. See, e.g., Lales v. Wholesale Motors Co., 133 Hawai'i 332, 343 n.9, 328 P.3d 341, 352 n.9 (2014) (arguments not raised below may be deemed waived).

Dobbs also seeks to demonstrate pretext by asserting he was treated more harshly than other DLC employees for workplace misconduct. In Hac v. Univ. of Hawaii, 102 Hawai'i 92, 102, 73 P.3d 46, 56 (2003), the supreme court recognized that pretext can be shown by comparison. There, the court recognized its prior holding that the employee must prove that all the relevant aspects of his employment situation were similar to those employees with whom he seeks to compare his treatment. Id. (discussing Furukawa v. Honolulu Zoological Soc'y, 85 Hawai'i 7, 14, 936 P.2d 643, 650 (1997). Furakawa

adopted the test "similarly situated employees are those who are subject to the same policies and subordinate to the same decision-maker as the plaintiff." 85 Hawai'i at 14, 936 P.2d at 650. When employees are similarly situated, there must be a showing that there was different treatment for violations of comparable seriousness. Hac, 102 Hawai'i at 102, 73 P.3d at 56.

Dobbs seeks to demonstrate pretext by comparing his termination to four other DLC employees cited for misconduct, LCO II Chad Ganier, LCO II Jarrett Kaho'ohanohano, FS Lloy, and LCO Trainee Cullen Kawano (**Trainee Kawano**). Under Furakawa, job title is not determinative of whether persons are similarly situated. 85 Hawai'i at 14, 936 P.2d at 650. However, the evidence in the record here demonstrates that LCO Trainees were not subject to the same policies as LCOs because they were not allowed to carry a DLC badge or conduct inspections without supervision. Further, Trainee Kawano, like Dobbs, was subject to the authority of FS Lloy and FS Matsuura. Dobbs does not show to whom the other officers were subordinate. Thus, under the Furakawa test, only Trainee Kawano was similarly situated to Dobbs.

The next issue is whether the violations were of comparable seriousness. Hac, 102 Hawai'i at 102, 73 P.3d at 56. Here, Dobbs asserts Trainee Kawano was the subject of a sexual harassment complaint by another trainee. Dobbs, however, provides no basis to compare allegations of Trainee Kawano's alleged misconduct to his own. We conclude that the Circuit Court did not err in failing to conclude that there was a

15

genuine issue of material fact as to whether similarly situated employees were given disparate treatment for the purpose of establishing pretext by comparison.

Thus, we conclude that Dobbs's arguments that the Circuit Court erred in granting summary judgment on his HWPA claim are without merit.

Finally, Dobbs challenges the Circuit Court's granting of the Second MSJ on his first amendment speech claims. The Hawai'i Supreme Court has held:

> A public employee claiming that an employer's action violates the speech clause of the first amendment bears the initial burden of making a prima facie showing that 1) the conduct was constitutionally protected, and 2) the conduct was a "substantial" or "motivating" factor in the government's decision to take the challenged action.

Crosby, 76 Hawai'i at 343, 876 P.2d at 1311 (quoting Mt. Healthy v. Doyle, 429 U.S. 274 (1977)). The test for causation is the same under the HWPA as under first amendment speech claims made by a public employee, turning on whether the defendant shows that the conduct was a "'substantial or motivating' factor" in the challenged action. Compare id. with Medina, 2016 WL 6748063 at *3 (citing Crosby, 76 Hawai'i at 341-42, 876 P.2d at 1309-10) (the employee has the burden of showing that the protected conduct was a "substantial or motivating factor" in the employer's decision to take the employment action). For the reasons stated above, Dobbs failed to demonstrate that his protected activity, including his speech activity, was the cause of his termination. Therefore, we conclude that the Circuit Court did not err by granting summary judgment as to Dobbs's first amendment claims.

For these reasons, the Circuit Court's July 28, 2016 Judgment is affirmed.

DATED: Honolulu, Hawai'i, February 20, 2019.

On the briefs:

Georgia K. McMillen,
for Plaintiff-Appellant.

Kristin K. Tarnstrom,
Moana M. Lutey,
Deputies Corporation Counsel,
County of Maui,
for Defendants-Appellees.

Presiding Judge

Associate Judge

Associate Judge